UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA SILVA-MARKUS,

                          Plaintiffs,

          -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; TILSA RODRIGUEZ-
GONZALEZ, in her Official and Individual
Capacity as PRINCIPAL OF THE HIGH
SCHOOL FOR CONTEMPORARY ARTS,

                          Defendants.

**ORDER**

19 Civ. 4335 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Patricia Silva-Markus, a former high school guidance counselor, brings

discrimination and retaliation claims against Defendants New York City Department of

Education ("DOE") and Tilsa Rodriguez-Gonzalez, alleging violations of the Age

Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law

("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Defendants have

moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's claims are largely

time-barred and otherwise fail to state a claim upon which relief may be granted.  For the reasons

stated below, Defendants' motion will be granted as to Plaintiff's ADEA claim.  The Court

declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.

**BACKGROUND**

I.      **FACTS**

          Silva-Markus is 58 years old and began working for the DOE in September 1988.

(Cmplt. (Dkt. No. 1) ¶¶ 7-8, 11)  In September 2013, she joined the High School for

Contemporary Arts (the "High School") in the Bronx as a Bilingual Guidance Counselor.  (Id.
¶ 7)

In December 2014, Defendant Rodriguez-Gonzalez became the Principal of the
High School.  (Id. ¶ 12)  On December 6, 2014, Principal Rodriguez-Gonzalez called Plaintiff
into her office for a meeting.  (Id. ¶ 14)  Rodriguez-Gonzalez asked Plaintiff about her age and
when she planned to retire.  (Id. ¶ 15)  Plaintiff – who at that time had worked for DOE for
approximately 26 years – said that she expected to retire after completing 32 years of service.
(Id.)

Later that day, Rodriguez-Gonzalez directed Plaintiff to move boxes and other
items around the High School's main office.  (Id. ¶ 17)  When Plaintiff asked whether a
custodian could move the boxes instead, Rodriguez-Gonzalez yelled and began kicking the
boxes.  (Id. ¶ 18)

On December 18, 2014, a group of students entered the High School's main office
and began asking Rodriguez-Gonzalez a series of questions.  (Id. ¶ 20)  Rodriguez-Gonzalez
became agitated and kicked her own door.  (Id. ¶ 21)  Rodriguez-Gonzalez then asked Plaintiff to
come to her office, where she scolded Plaintiff for failing to "take care of [her] kids."  (Id. ¶ 23)

Plaintiff reported Rodriguez-Gonzalez's treatment of her to the United Federation
of Teachers (the "UFT").  (Id. ¶ 26)  Plaintiff and her UFT representative, Michael Wooley,
attempted to speak with Rodriguez-Gonzalez after the December 18 incident, but Rodriguez-
Gonzalez did not take Silva's complaints seriously and asked them to leave the office.  (Id. ¶ 27)

In addition to her regular salary, Plaintiff earned approximately $30,000 per year
as a guidance counselor for "PM, Saturday, and summer academic programs at the High
School."  (Id. ¶ 29)  Soon after the December 18, 2014 incident, however, Plaintiff stopped

participating in these programs in order to "limit her interactions with Rodriguez-Gonzalez." (Id. ¶ 33)  Rodriguez-Gonzalez continued to mistreat Plaintiff, however, in order to "force her to quit."  (Id. ¶ 34)  Rodriguez-Gonzalez also sought to "fabricate a reason to provide [Plaintiff] with a 'U' Unsatisfactory rating in order to justify her termination."  (Id.)

On January 7, 2015, Rodriguez-Gonzalez entered Plaintiff's office and berated her and Jacqueline Cruz, another guidance counselor over the age of 40, for not filling out certain paperwork.  The scolding took place in front of students.  (Id. ¶¶ 36-38)  Cruz became distraught as a result of the incident, and Plaintiff cried.  (Id. ¶ 40)

On January 12, 2015, without explanation, Rodriguez-Gonzalez rearranged the guidance counselors' office suite and relocated Plaintiff's office to a windowless room in the basement.  (Id. ¶ 41)  Other guidance counselors were assigned offices with windows.  (Id.)  A younger teacher moved into Plaintiff's former office, even though the teacher "had a classroom and did not need an office."  (Id. ¶ 42)  Plaintiff asked Rodriguez-Gonzalez for a new office because her basement office lacked privacy and was not conducive to protecting students' confidentiality.  (Id. ¶ 43)  Plaintiff also became concerned that "poor ventilation in the basement exacerbated [her] acute bronchitis," and she submitted a doctor's note to that effect.  (Id. ¶ 44-45)  Plaintiff was then relocated to "an internal, windowless space that appeared as though it had been previously used for storage."  (Id. ¶¶ 45-46)

On January 26, 2015, Plaintiff called in sick.  (Id. ¶ 47)  Rodriguez-Gonzalez told Plaintiff that illness was not her problem, and that in the future she should notify Rodriguez-Gonzalez of any absences by email.  (Id. ¶ 48)

On January 30, 2015, without explanation, Rodriguez-Gonzalez reclassified Plaintiff as a College and Career Counselor instead of a Bilingual Guidance Counselor, which

had been her title for almost 30 years.  (Id. ¶¶ 49-50)  Plaintiff requested training for the new position, but Rodriguez-Gonzalez denied that request.  (Id. ¶ 50)

On February 5, 2015, without explanation, Rodriguez-Gonzalez removed Plaintiff's computer from her office, which limited her ability to perform her job duties for several days.  (Id. ¶ 51)

On February 24, 2015, Silva was in the main office making copies for Assistant Principal Luz Liriano.  (Id. ¶ 52)  Rodriguez-Gonzalez asked Plaintiff why she was in the main office and told her to leave.  (Id.)  Rodriguez-Gonzalez insisted that Plaintiff was not allowed in the main office, even though all staff members use this space.  (Id. ¶ 54)

On March 20, 2015, Rodriguez-Gonzalez instructed Plaintiff to travel to Brooklyn in a snowstorm to attend a workshop the next day.  (Id. ¶ 55)  When Plaintiff asked why she was being asked to attend, Rodriguez-Gonzalez replied, "Because I'm the Principal."  (Id. ¶ 56)  When Plaintiff inquired about reimbursement for parking, Rodriguez-Gonzalez said, "You're not getting reimbursed, and that's that."  (Id. ¶ 57)  Plaintiff arranged for a car service to transport her to and from the workshop, which she paid for out of her own pocket.  (Id. ¶ 58)

On March 25, 2015, Wooley – Plaintiff's UFT representative – accompanied her to a "disciplinary" meeting in Rodriguez-Gonzalez's office.[1]  (Id. ¶ 65)  When they arrived, Assistant Principal Christal Ferguson and Roberta Capon, Rodriguez-Gonzalez's secretary, were present.  (Id. ¶ 66)  Wooley told Rodriguez-Gonzalez that – pursuant to a Memorandum of Understanding between the UFT and the DOE – only he, Plaintiff, and Rodriguez-Gonzalez could attend the meeting.  (Id. ¶ 67)  Rodriguez-Gonzalez said that she needed Assistant Principal Ferguson for "support" and that she needed Capon to "take notes."  (Id. ¶ 68)  Wooley

---

[1]  The Complaint does not specify what prompted the disciplinary meeting.

insisted that Assistant Principal Ferguson and Capon had to leave before the meeting could begin.  (Id.)  Rodriguez-Gonzalez then ended the meeting, saying that it would be conducted "[her] way" or there would be no "meeting at all."  (Id.)  Before leaving, Wooley asked Rodriguez-Gonzalez what alleged misconduct had prompted the meeting.  (Id. ¶ 69)  Rodriguez-Gonzalez said that it "might" involve "a violation of protocol and procedure," but she was not sure.  (Id. ¶ 70)

On April 1, 2015, Plaintiff and Wooley appeared in Rodriguez-Gonzalez's office for another disciplinary meeting.  (Id. ¶¶ 73-74)  Assistant Principal Ferguson and Capon were again present.  (Id. ¶ 74)  Wooley refused to participate unless Ferguson and Capon left.  Rodriguez-Gonzalez cancelled the meeting once again.  (Id.)

On April 16, 2015, Rodriguez-Gonzalez convened another disciplinary meeting for Plaintiff.  (Id. ¶ 75)  Assistant Principal Ferguson and Capon were again present.  (Id. ¶ 76)  During the meeting, Rodriguez-Gonzalez called Lisa Becker, a DOE attorney, and stated that the disciplinary meeting would proceed with Ferguson and Capon in the room "whether [Becker] like[d] it or not."  (Id. ¶¶ 76-77)  Plaintiff called "Dr. Lara," a UFT district representative, who came to the High School and informed Rodriguez-Gonzalez that her request was inappropriate and violated the DOE-UFT Memorandum of Understanding.  (Id.)  Based on Dr. Lara's advice, Plaintiff refused to participate in the meeting.  (Id. ¶ 78)

On May 21, 2015, Rodriguez-Gonzalez convened another disciplinary meeting for Plaintiff.  (Id. ¶¶ 80-81)  Rodriguez-Gonzalez told Plaintiff that she had committed a violation "beyond [Rodriguez- Gonzalez's] control" and that the UFT could no longer help her.  (Id. ¶ 81)  When asked for details, Rodriguez-Gonzalez could not provide specifics.  (Id.)  After Wooley accused Rodriguez-Gonzalez of harassing Plaintiff, Rodriguez-Gonzalez said that she

would reschedule the meeting.  (Id. ¶ 82)  Before the meeting ended, Rodriguez-Gonzalez told

Plaintiff that she should stay in her office and not enter any classrooms "for [her] own

protection" until Rodriguez-Gonzalez "finds out what's going on."  (Id. ¶ 83)  Plaintiff asked

how she was supposed to perform her work duties given these restrictions.  (Id.)  Rodriguez-

Gonzalez replied that, for the next 48 hours, "that's what's going to happen," because "I am the

Principal."  (Id.)

Plaintiff alleges that she later had "numerous medical appointments with

physicians, who advised her not to return to work because she was suffering from severe stress

and anxiety" and "severe back pain."  (Id. ¶ 84)  Plaintiff attributes these ailments to Rodriguez-

Gonzalez's treatment of her.  (Id. ¶ 85)

On June 10, 2015, Rodriguez-Gonzalez scheduled another disciplinary meeting

for Plaintiff, allegedly for taking an unauthorized photograph of a child.  (Id. ¶ 86)  Plaintiff was

never disciplined for taking the photograph or the unspecified conduct that prompted the other

disciplinary meetings between March and May 2015.[2]  (Id. ¶ 87)

In June 2015, Rodriguez-Gonzalez issued a "U" rating to Plaintiff for the 2014-

2015 school year.  (Id. ¶ 88)  Plaintiff alleges that the "U" rating was unjustified and that

Rodriguez-Gonzalez did not properly notify her that she was going to receive a "U" rating, as

required by the DOE-UFT Memorandum of Understanding.[3]  (Id. ¶ 90)

On June 1, 2015, Plaintiff complained to the DOE's Office of Equal Opportunity

about Rodriguez-Gonzalez.  (Id. ¶ 91)  On June 23, 2015, Plaintiff received a notice to appear at

a June 30, 2015 medical examination, so that the DOE could assess her fitness to return to work

---

[2]  It is unclear whether the prior meetings concerned the photograph or other alleged misconduct.
[3]  According to the Complaint, Plaintiff was not "officially" notified of her "U" rating until
February 10, 2016.  (Id. ¶ 100)

in September, pursuant to New York State Education Law § 2568.  (Id. ¶ 93)  Rodriguez-Gonzalez allegedly requested the medical examination, even though the notice stated that Superintendent Carron Staple made the request.  (Id. ¶ 94)  Silva was deemed fit to work.  (Id. ¶ 97)

On July 30, 2015, Plaintiff "learned that she had been excessed . . . after logging on to her profile on the DOE website and observing that her employment status had changed." (Id. ¶¶ 101, 105)  A DOE employee is "excessed" when "a school reduces the size of its faculty, such as when it experiences an unexpected drop in student enrollment, loses a budget line or is being closed, redesigned or phased out."  (Id. ¶ 102)  According to the Complaint, there was "no indication that the High School needed to reduce the size of its staff due to a decrease in student enrollment, budgetary reasons, or any other financial or administrative reasons."  (Id. ¶ 103)  The DOE-UFT Memorandum of Understanding requires that employees at risk of being "excessed" receive notice by June 15 and that "excesses will be decided on the basis of seniority."  (Id. ¶ 104)  Plaintiff alleges that Rodriguez-Gonzalez violated the DOE-UFT Memorandum of Understanding by excessing her instead of her less experienced colleagues.  (Id. ¶ 106)

In September 2015, the DOE sent Plaintiff an email notifying her of her first Absent Teacher Reserve ("ATR") assignment.  (Id. ¶ 105)  As an ATR teacher, Plaintiff was no longer assigned to any particular school.  (Id. ¶ 108)  Instead, she was assigned to various schools on an as-needed basis.  (Id.)  She was also not eligible to earn additional compensation by working at after-school programs.  (Id. ¶ 110)  As a result of being "excessed," Plaintiff has suffered "emotional distress."  (Id. ¶ 109)  She retired as of June 2016 without reaching her goal of 32 years of service.  (Id.)  As a result, Plaintiff receives lower pension payments.  (Id. ¶¶ 109-11)

Plaintiff filed a notice of claim against the DOE on February 8, 2016.  (Id.)  On April 26, 2016, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), in which she alleged age-based discrimination and retaliation.  (Id. ¶ 119)  After an investigation, the EEOC issued a reasonable cause finding on December 19, 2018.  (Id. ¶ 121)  After the EEOC was unable to conciliate a resolution, the agency issued a right to sue letter on February 13, 2019.  (Id. ¶ 122)

The Complaint was filed on May 13, 2019, and alleges discrimination and retaliation claims against DOE and Rodriguez-Gonzalez under the ADEA, the NYSHRL, and the NYCHRL.

## DISCUSSION

## I.      LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case."  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515 (2002).  Instead, the "ordinary rules for assessing the sufficiency of a complaint" under Fed. R. Civ. P. 8(a)'s notice pleading standard apply.  Swierkiewicz, 534 U.S. at 511.

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).  To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and plaintiff's claims must be "plausible on [their] face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557).  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  Id. at 570.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  "In situations where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative

bodies, as well as the facts set forth therein." Chidume v. Greenburgh-N. Castle Union Free Sch. Dist., No. 18-CV-01790 (PMH), 2020 WL 2131771, at *2 (S.D.N.Y. May 4, 2020).

## II.   ANALYSIS

### A.   Statute of Limitations

#### 1.   Applicable Law

"Before a plaintiff may assert claims under . . . the ADEA in federal court, she must present the claims forming the basis of such a suit in a complaint to the EEOC." Zoulas v. New York City Dep't of Educ., 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019).  "[T]he ADEA require[s] that a plaintiff . . . file a charge with the EEOC within 300 days of the alleged discrimination." Harewood v. New York City Dep't of Educ., No. 18 CV 5487 (KPF) (KHP), 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019), report and recommendation adopted, 2019 WL 2281277 (S.D.N.Y. May 29, 2019).  "'[C]laims regarding acts that occurred more than three hundred days prior to the employee's initiation of administrative review are thus time-barred.'" Apionishev v. Columbia Univ., No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *3 (S.D.N.Y. Mar. 25, 2011) (quoting Klein v. New York Univ., No. 07 Civ. 0160 (RLC), 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008)).

"The continuing violation doctrine provides that '[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last violation.'" Flores v. United States, 885 F.3d 119, 121 (2d Cir. 2018) (alterations in original) (quoting Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)).  "To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'" Dash v. Bd. of Educ. of City Sch. Dist. of New York, 238 F. Supp. 3d 375, 388 (E.D.N.Y. 2017) (quoting Nat'l

R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)).  "Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position."  Zoulas, 400 F. Supp. 3d at 50.  "As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit."  Trinidad v. New York City Dep't of Correction, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006).

### 2.    Application

Given that Plaintiff filed a charge of discrimination with the EEOC on April 26, 2016 (Cmplt. (Dkt. No. 1) ¶ 119), acts occurring more than 300 days before April 26, 2016 – i.e., before July 1, 2015 – are outside the statutory period.  As set forth above, nearly all of the Complaint's allegations concern conduct that took place before July 1, 2015.  For example, all of Plaintiff's allegations regarding Rodriguez-Gonzalez's treatment of her during the 2014-2015 school year (see Cmplt. (Dkt. No. 1) ¶¶ 17, 41, 65, 73, 75, 80, 86, 88, 93) are outside the 300-day period.

The only alleged adverse actions that clearly fall within the statutory period are the "excessing" of Plaintiff from the High School on July 30, 2015; her ATR placement in September 2015; and her alleged constructive discharge in June 2016.  (Id. ¶¶ 105, 109)  The timing of Plaintiff's "U" rating is less straightforward.  Rodriguez-Gonzalez issued the rating in June 2015 (id. ¶ 88), but Plaintiff claims that it was not until February 2016 that she was "officially" informed of the rating.  (Id. ¶ 101; see also Pltf. Opp. (Dkt. No. 33) at 11 n.1)[4]  For purposes of resolving Defendants' motion to dismiss, the Court assumes that Plaintiff did not

---

[4]  Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

learn of her "U" rating until February 2016, and that any discrimination claim based on the rating is therefore timely.

Although most of Plaintiff's allegations fall outside the statutory period, she contends that they nonetheless can be cited to support her claims, because she suffered "adverse employment actions within the applicable statute of limitations that were part of a continuing violation." (Pltf. Opp. (Dkt. No. 33) at 7) But the alleged adverse acts that took place within the statutory period – the "excessing" and the ATR placement, and Plaintiff's "U" rating – are discrete acts to which the continuing violation doctrine does not apply. See, e.g., Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."); Olivier v. Cty. of Rockland, No. 15-CV-8337 (KMK), 2017 WL 934711, at *5 (S.D.N.Y. Mar. 8, 2017) ("'Unsatisfactory ratings and negative evaluations are discrete acts.'") (quoting Yang v. Dep't of Educ. of the City of N.Y., No. 14-CV-7037, 2016 WL 4028131, at *5 (E.D.N.Y. July 26, 2016)); Lyons v. New York, No. 15 CIV. 3669 (NSR), 2016 WL 5339555, at *4 (S.D.N.Y. Sept. 22, 2016) ("'[T]ransfers . . . are . . . discrete acts which do not constitute a continuing violation' for statute of limitations purposes.") (quoting Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001)); Gaston v. New York City Dep't of Health Office of Chief Med. Exam'r, 432 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) ("claim[] of . . . constructive discharge" constitutes "a discrete act").

Because the continuing violation doctrine is not applicable here, Plaintiff's ADEA claims may be premised only on the "excessing" and the ATR assignment, and Plaintiff's "U" rating. The other alleged adverse acts fall outside the statutory period.

B.  **ADEA Discrimination Claim**

1.  **Applicable Law**

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or

refuse to hire or to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age."  29 U.S.C. § 623(a)(1).  "To state an ADEA discrimination claim, a plaintiff

must allege that (1) he or she was 'within the protected age group,' (2) he or she was 'qualified

for the position,' (3) he or she 'experienced adverse employment action,' and (4) 'such action

occurred under circumstances giving rise to an inference of discrimination.'"  Langella v.

Mahopac Cent. Sch. Dist., No. 18-CV-10023 (NSR), 2020 WL 2836760, at *6 (S.D.N.Y. May

31, 2020) (quoting Green v. Town of E. Haven, 952 F.3d 394, 403 (2d Cir. 2020)).  "[A] plaintiff

need only meet a 'minimal' pleading standard for an age discrimination claim brought under the

ADEA."  Franchino v. Roman Catholic Archdiocese of N.Y., No. 15 Civ. 6299 (VB), 2016 WL

3360525, at *5 (S.D.N.Y. June 15, 2016) (citing Johnson v. Andy Frain Servs., Inc., 638 F.

App'x 68, 70 (2d Cir. 2016), rev'd on other grounds, 692 F. App'x 39 (2d Cir. 2018)).

To support a discrimination claim, the adverse action must be "materially adverse

with respect to the terms and conditions of employment," and "more disruptive than a mere

inconvenience or an alteration of job responsibilities."  Davis v. N.Y.C. Dep't of Educ., 804 F.3d

231, 235 (2d Cir. 2015); see Ferraro v. New York City Dep't of Educ., 404 F. Supp. 3d 691, 717

(E.D.N.Y. 2017), aff'd, 752 F. App'x 70 (2d Cir. 2018) ("materially adverse for purposes of a

retaliation claim is broader than those prohibited for purposes of a discrimination claim").

An "adverse action may . . . take the form of a hostile work environment" or a

constructive discharge.  See Livingston v. Roosevelt Union Free Sch. Dist., No. 17-CV-4189

(JMA) (SIL), 2020 WL 1172642, at *7 (E.D.N.Y. Jan. 15, 2020), report and recommendation adopted, 2020 WL 1166450 (E.D.N.Y. Mar. 11, 2020); Knight v. Cty. of Cayuga, No. 5:19-CV-712, 2020 WL 618112, at *6 (N.D.N.Y. Feb. 10, 2020) ("Adverse actions do . . . include constructive discharge."); Rosen v. N.Y.C. Dep't of Educ., No. 18 CIV. 6670 (AT), 2019 WL 4039958, at *8 (S.D.N.Y. Aug. 27, 2019) (acknowledging viability of "constructive discharge and hostile work environment" claims in the ADEA context).

To establish a hostile work environment, a plaintiff "must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn v. City of N.Y., 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "'The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014)). In evaluating hostile work environment claims, courts consider the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (quoting Harris, 510 U.S. at 23).

"To state a claim for constructive discharge an employee must show that his employer deliberately made his working conditions so intolerable that the employee was forced into an involuntary resignation." Cepeda v. Mount Sinai Servs. of Mount Sinai Sch. of Med., No. 02 CIV.3378 (AGS), 2003 WL 367879, at *2 (S.D.N.Y. Feb. 19, 2003) (citing Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983)). "Constructive discharge is, in effect, 'an

aggravated case of . . . hostile work environment.'"  Petyan v. New York City Law Dep't, No. 14-CV-1434 GBD JLC, 2015 WL 1855961, at *9 n.10 (S.D.N.Y. Apr. 23, 2015), report and recommendation adopted, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (alteration in Petyan) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 146 (2004)).  Thus, "'when an individual has failed to allege a hostile work environment, his constructive discharge claim based on those allegations must also fail.'"  Ware v. L-3 Vertex Aerospace, LLC, No. 16 CIV. 8067 (LAP), 2020 WL 783764, at *10 n.8 (S.D.N.Y. Feb. 18, 2020) (quoting Lambert v. Trump Int'l Hotel & Tower, 304 F. Supp. 3d 405, 427 (S.D.N.Y. 2018)).

## 2.    Analysis

Plaintiff's ADEA discrimination claim fails because the Complaint does not allege facts within the statutory period that constitute an adverse action.

Plaintiff's "U" rating – which was issued in June 2015 but which she claims she only received notice of in February 2016 – does not qualify as an adverse action for purposes of her discrimination claim.  See Woolfolk v. New York City Dep't of Educ., No. 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (finding that multiple "U" ratings do not rise to the level of adverse actions, because "'a negative performance review, without more, does not represent an adverse employment action'") (quoting Chung v. City Univ. of N.Y., 605 F. App'x 20, 22 (2d Cir. 2015); Spaulding v. New York City Dep't of Educ., No. 12 Civ. 3041 (KAM) (VMS), 2015 WL 12645530, at *43 (E.D.N.Y. Feb. 19, 2015), report and recommendation adopted, 2015 WL 5560286 (E.D.N.Y. Sept. 21, 2015) ("negative performance reviews, standing alone, do not rise to the level of an adverse action for purposes of a discrimination claim") (citing Kercado-Clymer v. City of Amsterdam, 370 Fed. App'x 238, 243

(2d Cir. 2010) and <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 223 (2d Cir. 2001)).

As to Plaintiff being "excessed" – a development that resulted in her ATR placement – courts have repeatedly held that an ATR placement, standing alone, does not constitute an adverse action for purposes of a discrimination or retaliation claim.  <u>See, e.g.</u>, <u>Torres v. New York City Dep't of Educ.</u>, No. 18-CV-2156 (NGG) (RER), 2019 WL 2124891, at *7 (E.D.N.Y. May 15, 2019) ("[M]ere placement of Plaintiff in the ATR does not constitute an adverse employment action for purposes of a discrimination or retaliation claim."); <u>Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.</u>, 230 F. Supp. 3d 88, 106 (E.D.N.Y. 2017) ("Becoming a member of the ATR . . . does not by itself qualify as a materially adverse employment action.  Plaintiff did not experience a change in salary or benefits after she received an appropriate letter of excess, a further indication that she did not suffer an adverse employment action."); <u>see also</u> <u>Lam v. New York City Dep't of Educ.</u>, No. 18 CIV. 2756 (PGG), 2019 WL 2327655, at *11 (S.D.N.Y. May 30, 2019) ("[T]o the extent Plaintiff's discrimination claim is based on her assignment to ATR, that is insufficient."); <u>Moschetti v. New York City Dep't of Educ.</u>, No. 15-CV-3161 (KMK), 2018 WL 4759787, at *16 (S.D.N.Y. Sept. 28, 2018), <u>aff'd</u>, 778 F. App'x 65 (2d Cir. 2019) ("Plaintiff does not explain how ATR status serves as a demotion or loss of wages.").

Although Plaintiff contends that her ATR status made her ineligible to participate in certain after-school and summer programs – through which she earned supplemental income – any claim based on the loss of this supplemental income accrued in December 2014, when Plaintiff asserts that she stopped participating in these programs because of Rodriguez-Gonzalez's alleged discriminatory treatment of her.  (Cmplt. (Dkt. No. 1) ¶ 110); <u>see</u> <u>Shah v.</u>

MTA New York City Transit, No. 12 CV 4276 ERK RLM, 2013 WL 504387, at *5 (E.D.N.Y.

Feb. 8, 2013) ("[T]he claim of discrimination accrues from the date the employee 'knows or has

reason to know of the injury which is the basis of his action.'") (quoting Cornwell v. Robinson,

23 F.3d 694, 703 (2d Cir. 1994)); Clifford v. Home Box Office, Inc., No. CV-08-3357 SJF AKT,

2009 WL 9156140, at *9 (E.D.N.Y. May 18, 2009) ("an ADEA cause of action accrues when the

plaintiff discovers that he has been injured, not when he determines that the injury was

unlawful") (citing Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 (7th Cir. 1995)); Giordano

v. Potter, No. 03-CV-0698, 2004 WL 45526, at *1 (N.D.N.Y. Jan. 9, 2004) ("A discrimination

claim . . . accrue[s] when the employee . . . is aware of the actual injury (that is, the adverse

employment action).").  Any claim based on the loss of this supplemental income is therefore

time-barred.

    While Plaintiff argues that she was subjected to a hostile work environment and

constructive discharge because of the way that Rodriguez-Gonzalez treated her during the 2014-

2015 school year (Pltf. Opp. (Dkt. No. 33) at 12, 14-15, 17-18), this conduct took place before

July 1, 2015 and is therefore outside the 300-day statutory window.  There is no indication that

Plaintiff interacted with Rodriguez-Gonzalez after June 2015.  Moreover, Plaintiff has alleged no

facts suggesting that – as an ATR teacher during the 2015-16 school year – her workplace was

"permeated with discriminatory intimidation, ridicule, and insult," Littlejohn, 795 F.3d at 321, or

that her working conditions as an ATR teacher were "so intolerable that [she] was forced into an

involuntary resignation."  Cepeda, 2003 WL 367879, at *2.  Accordingly, Plaintiff's hostile work

environment and constructive discharge claims under the ADEA fail.

    Because Plaintiff has not alleged facts showing an adverse employment action,

her discrimination claim must be dismissed.  Woolfolk, 2020 WL 1285835, at *7 ("Because

Plaintiff does not plausibly allege any adverse employment action, her . . . discrimination claim must be dismissed.").

### C. ADEA Retaliation Claim

#### 1. Applicable Law

The ADEA's anti-retaliation provisions make it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . participated in any manner in an investigation, proceeding, or litigation under this [Act]."  29 U.S.C. § 623(d).  Retaliation claims under the ADEA are analyzed under the same framework applicable to retaliation claims under Title VII.  See Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016) (applying Title VII retaliation analysis to ADEA retaliation claim).  "To establish a prima facie case of retaliation, a plaintiff must show (1) the employee was engaged in an activity protected by [the ADEA], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  Langella v. Mahopac Cent. Sch. Dist., No. 18-CV-10023 (NSR), 2020 WL 2836760, at *11 (S.D.N.Y. May 31, 2020) (internal quotation marks omitted). "[W]hile a plaintiff need not specifically plead each and every element of a prima facie case . . . to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claim for relief are plausible."  Simpson v. MTA/New York City Transit Auth., No. 16-CV-3783 (MKB), 2016 WL 8711077, at *4 (E.D.N.Y. Aug. 26, 2016).

As for the first element – engaging in protected activity – Plaintiff asserts that on December 18, 2014, she complained to Rodriguez-Gonzalez about age discrimination when she told her to "please stop speaking to me like that."  (Cmplt. (Dkt. No. 1) ¶ 24; Pltf. Opp. (Dkt. No.

18

33) at 19)  Rodriguez-Gonzalez had made no reference to Plaintiff's age during that encounter,

however, and the Complaint contains no allegations suggesting that Rodriguez-Gonzalez should

reasonably have understood that Plaintiff was complaining about age discrimination at that time.

Though Plaintiff reported Rodriguez-Gonzalez's behavior to her UFT representative (Cmplt.

(Dkt. No. 1) ¶ 26-27), there is no indication that this complaint alleged age discrimination.

Accordingly, Plaintiff's December 18, 2014 complaints do not constitute an activity protected by

the ADEA.  See Wilson v. Lenox Hill Hosp./Northwell Health, No. 19-CV-5537 (AMD) (LB),

2019 WL 6726304, at *3 (E.D.N.Y. Dec. 11, 2019) ("[V]ague or ambiguous complaints are

insufficient, and the employer should reasonably have understood that the plaintiff's complaint

was directed at conduct prohibited by . . . the ADEA. . . . Mere complaints of unfair treatment are

not protected under . . . the ADEA.") (internal quotation marks omitted); see also Simpson v.

MTA/New York City Transit Auth., No. 16-CV-3783 (MKB), 2016 WL 8711077, at *5-6

(E.D.N.Y. Aug. 26, 2016) ("Plaintiff has failed to allege any facts from which it can be inferred

that Plaintiff engaged in a protected activity.  Plaintiff does not allege, for instance, that she filed

a complaint or grievance with supervisors about the acts of alleged discrimination on the basis of

her age. . . . Without an allegation that Plaintiff has engaged in protected activity, Plaintiff cannot

plead a claim for retaliation under . . . the ADEA.").

        The Complaint goes on to allege that on June 1, 2015, Plaintiff complained to the

DOE's Office of Equal Opportunity about Rodriguez-Gonzalez.  (Cmplt. (Dkt. No. 91) ¶ 91)

Although the Complaint does not assert that Plaintiff complained to the Office of Equal

Opportunity about alleged age discrimination, Defendants have not challenged Plaintiff's

assertion that this complaint constitutes protected activity under the ADEA.  Accordingly, this

Court assumes – for purposes of resolving Defendants' motion to dismiss – that Plaintiff's June 2015 complaint to the Office of Equal Opportunity qualifies as protected activity.

As to the second element – knowledge – Defendants do not dispute that they were aware of Plaintiff's June 2015 complaint.  (Def. Br. (Dkt. No. 32-1) at 25-28)

As to the third element – adverse action – Plaintiff complains that her ATR placement and "U" rating were retaliatory.  (Pltf. Opp. (Dkt. No. 33) at 20)  As discussed above, however, assignment to the ATR does not constitute an adverse action under the circumstances here.  See Lam, 2019 WL 2327655, at *11; Torres, 2019 WL 2124891, at *7; Moschetti, 2018 WL 4759787, at *16; Harris, 230 F. Supp. 3d at 106; see also Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 206 (2d Cir. 2006) (explaining, in a retaliation case, that "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action") (citations and internal quotations omitted)).

Although Plaintiff contends that she lost supplemental income by virtue of her ATR placement, the Complaint alleges that Plaintiff stopped earning this income in December 2014.  (Cmplt. (Dkt. No. 1) ¶¶ 27-33)  Accordingly, the loss of this benefit is not casually linked to her June 2015 complaint.  See Mucciarone v. Initiative, Inc., No. 18-CV-567 (PKC), 2020 WL 1821116, at *14 (S.D.N.Y. Apr. 10, 2020) ("Actions that predate the occurrence of the protected activity cannot form the required causal connection."); Szarzynski v. Roche Labs., Inc., No. 07-CV-6008, 2010 WL 811445, at *14 (W.D.N.Y. Mar. 1, 2010) ("[T]he alleged [adverse] action predates any protected activity.  Thus, plaintiff fails to make out a prima facie case of retaliation case because he cannot show a causal connection."); Negussey v. Syracuse Univ., No. 95-CV-

1827, 1997 WL 141679, at *12 (N.D.N.Y. Mar. 24, 1997) ("[A] plaintiff may not predicate a retaliation claim on acts that predate the protected activity[.]").

Courts have found, however, that negative evaluations can constitute adverse action for purposes of a retaliation claim.  See Spaulding, 2015 WL 12645530, at *43 ("Although . . . negative performance reviews, standing alone, do not rise to the level of an adverse action for purposes of a discrimination claim, courts have held that such allegations may be adverse actions for purposes of a retaliation claim.").  Accordingly, this Court concludes that Plaintiff has alleged an adverse action for purposes of her retaliation claim.

Plaintiff's retaliation claim falters, however, at the fourth element – causation. Plaintiff alleges that in about December 2014 – after Plaintiff had foregone her supplemental work in after-school programs – Rodriguez-Gonzalez nonetheless resolved to mistreat Plaintiff so severely that she would quit.  Failing that, Rodriguez-Gonzalez planned to give Plaintiff a "U" rating to justify her termination.  (Cmplt. (Dkt. No. 1) ¶ 34 ("Even after Ms. Silva resigned from the PM and Saturday academic programs, Defendant Rodriguez-Gonzalez continued to constantly berate and harass her in a clear attempt to either force her to quit or fabricate a reason to provide her with a "U" Unsatisfactory rating in order to justify her termination."); see also id. ¶¶ 59-61 (alleging that Rodriguez-Gonzalez's actions between March and May 2015 were motivated by her desire to give Silva a "U" rating, which would lead to her termination))  Thus, by Plaintiff's own account, Rodriguez-Gonzalez was intent on forcing Plaintiff out of the High School and giving her a "U" rating well before Plaintiff complained to the Office of Equal Opportunity in June 2015.  As a result, there can be no causal connection.  See Bacchus v. New York City Dep't of Educ., 137 F. Supp. 3d 214, 247 (E.D.N.Y. 2015) ("An employer's continuation of a course of conduct that had begun before the employee complained does not

constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct.") (internal quotation marks omitted); Wang v. Palmisano, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016) ("where even very close temporal proximity exists, the requisite causal connection will falter if the employer's complained-of conduct began before the employee's corresponding protected activity"); Varughese v. Mount Sinai Med. Ctr., No. 12-CV-8812, 2015 WL 1499618, at *66 (S.D.N.Y. Mar. 27, 2015) ("[T]hose adverse actions cannot be chalked up to retaliation . . . because they were part and parcel of a course of conduct that began well before any protected activity took place.").  Accordingly, Plaintiff's ADEA retaliation claim will be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 32) is granted.

Plaintiff has requested leave to amend.  (Pltf. Opp. (Dkt. No. 33) at 8)  Any motion for leave to amend must be filed by **October 14, 2020**.  To the extent that Plaintiff moves for leave to amend and the Court grants her motion, the Court will address the viability of her NYSHRL and NYCHRL claims at that time.  At present, Plaintiff's NYSHRL and NYCHRL claims are dismissed without prejudice to refiling in state court.  See Sefovic v. Mem'l Sloan Kettering Cancer Ctr., No. 15 Civ. 5792 (PAC), 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the

remaining state-law claims.'") (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7

(1988)) (alterations omitted).

Dated:  New York, New York
        September 30, 2020

                                            SO ORDERED.

                                            _____
                                            Paul G. Gardephe
                                            United States District Judge