UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA SILVA-MARKUS, | |
| Plaintiff, | |
| - against - | **ORDER** |
| NEW YORK CITY DEPARTMENT OF EDUCATION and TILSA RODRIGUEZ-GONZALEZ, in her official capacity as Principal of the High School for Contemporary Arts, and in her individual capacity, | 19 Civ. 4335 (PGG) (SLC) |
| Defendants. | |

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Patricia Silva-Markus, a former high school guidance counselor, brings discrimination and retaliation claims against Defendants New York City Department of Education ("DOE") and Tilsa Rodriguez-Gonzalez, asserting violations of the Age Discrimination and Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA"); the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "NYCHRL").

Plaintiff moved to amend the Complaint, and this Court referred the motion to Magistrate Judge Sarah L. Cave for a Report & Recommendation ("R&R"). (Pltf. Mot. (Dkt. No. 35); Proposed Am. Cmplt. ("PAC") (Dkt. No. 35-1); Referral Order (Dkt. No. 42)) On July 26, 2021, Judge Cave issued an R&R recommending that the motion to amend be denied. (R&R

(Dkt. No. 43) at 2)[1]  Plaintiff has filed objections to the R&R.  (Pltf. Obj. (Dkt. No. 44))  The

R&R will be adopted as set forth below, and Plaintiff's motion to amend will be denied.

## BACKGROUND

### I.    FACTS

Plaintiff is 58 years old and began working for the DOE in 1988.  (PAC (Dkt. No.

35-1) ¶¶ 7-8)[2]  Between September 2013 and June 2015, Plaintiff served as a bilingual guidance

counselor at the High School for Contemporary Arts in the Bronx (the "School").  (Id. ¶ 7)

In December 2014, Defendant Tilsa Rodriguez-Gonzalez became the principal of

the School.  (Id. ¶ 12)  Soon thereafter – at her first meeting with Plaintiff – Rodriguez-Gonzalez

"demanded to know how old [Plaintiff] was, the number of years she had worked at the School,

and when she was planning to retire from the DOE."  (Id. ¶¶ 14-15)  Plaintiff "responded that she

did not plan to retire until she completed 32 years of service with the DOE."  (Id. ¶ 15)

In the following weeks, Rodriguez-Gonzalez verbally harassed Plaintiff and

assigned her tasks that "clearly exceeded the scope of [Plaintiff's] responsibilities as a guidance

counselor."  (Id. ¶ 17)  Plaintiff reported Rodriguez-Gonzalez's harassment to the United

Federation of Teachers (the "Union").  When Plaintiff and a Union representative complained to

---

[1]  All references to page numbers in this order are as reflected in this District's Electronic Case Files ("ECF") system.

[2]  The facts pled in the PAC are presumed true for purposes of resolving Plaintiff's motion to amend.  See, e.g., Shoaibi v. Mayorkas, Case # 20-CV-7121-FPG, 2021 WL 4912951, at *1 (W.D.N.Y. Oct. 21, 2021).  Moreover, because the parties have not objected to Judge Cave's recitation of the alleged facts, this Court adopts her account of the alleged facts.  See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

Rodriguez-Gonzalez about the harassment, she "refused to take [Plaintiff's] complaints seriously and asked them to leave [her] office." (Id. ¶¶ 25-27)

"Once [Plaintiff] complained to the Union, Defendant Rodriguez-Gonzalez's harassment of her grew progressively worse." (Id. ¶ 28)  Between January and March 2015, Rodriguez-Gonzalez (1) berated Rodriguez-Gonzalez and another guidance counselor over the age of 40 in the presence of students; (2) relocated Plaintiff to a windowless room in the basement and placed "a young teacher" in what had been Plaintiff's office; (3) reclassified Plaintiff from a bilingual guidance counselor to "a College and Career Counselor, a position in which she had no training or experience, in an attempt to set her up for failure"; and (4) "without notice, . . . ordered [Plaintiff] to travel to Brooklyn in a snowstorm the following day in order to attend a workshop that was typically attended by her colleague." (Id. ¶¶ 35-55)

In addition to her regular salary, Plaintiff "earned approximately $30,000 per year . . . as a guidance counselor for the PM, Saturday, and summer academic programs at the . . . School." (Id. ¶ 29)  Because Rodriguez-Gonzalez began attending those programs after she became the School's principal, Plaintiff "reluctantly resigned from her position as the guidance counselor for the PM and Saturday academic programs in order to limit her interactions with . . . Rodriguez-Gonzalez." (Id. ¶¶ 31, 33)

"In March 2015, Defendant Rodriguez-Gonzalez began to repeatedly issue 'disciplinary' notices to [Plaintiff], vaguely accusing her of wrongdoing and requiring her to attend disciplinary meetings with . . . Rodriguez-Gonzalez." (Id. ¶ 62)  Although (1) none of the allegations of wrongdoing against Plaintiff were "substantiated," and (2) these meetings did not "result[] in any disciplinary actions against [Plaintiff]," they "left enough of a paper trail to support an annual ['Unsatisfactory' rating] for the 2014-2015 school year." (Id. ¶ 87)

Although Rodriguez-Gonzalez issued the "Unsatisfactory" rating in about June 2015 (id. ¶ 88), Plaintiff did not learn of the rating until February 10, 2016 (id. ¶ 100).  As a result of the "Unsatisfactory" rating, Plaintiff "was automatically prevented from getting compensated for per session or summer work."  (Id.)

On June 1, 2015, Plaintiff "contacted the DOE's Office of Equal Opportunity Complaint Unit to notify it of Defendant Rodriguez-Gonzalez's illegal actions against [her]."[3] (Id. ¶ 91)  On June 30, 2015 – pursuant to New York Education Law § 2568[4] – DOE required Plaintiff to submit to a medical examination to determine her fitness to return to work in September.  (Id. ¶¶ 93-94)  Although the notice of the examination states that DOE Superintendent Carron Staple ordered the medical examination, Plaintiff alleges that Rodriguez-Gonzalez requested it.  (Id. ¶ 94)  Plaintiff was deemed fit to return to work.  (Id. ¶ 97)

On July 30, 2015, Plaintiff "learned that she had been 'excessed' and placed into the Absent Teacher (ATR) pool."  (Id. ¶ 100)  In a September 2015 email, DOE notified Plaintiff of her first ATR assignment.  (Id. ¶ 104)  As an ATR teacher, Plaintiff was no longer assigned to a particular school; instead, she was assigned to various schools on an as-needed basis.  (Id. ¶ 107)  "Some of her assignments required her to pay for parking out of pocket, which she was

---

[3]  The PAC does not explain what "illegal actions" Plaintiff brought to the attention of the OEO Complaint Unit.

[4]  New York Education Law § 2568 authorizes

> [t]he superintendent of schools of a city having a population of one million or more . . . to require any person employed by the board of education of such city to submit to a medical examination by a physician or school medical inspector of the board, in order to determine the mental or physical capacity of such person to perform his duties, whenever it has been recommended in a report in writing that such examination should be made.

N.Y. Educ. L. § 2568.

not required to do at her previous school, and she was not given any work in her bilingual

counsel license area as an ATR." (Id.)  As an ATR teacher, Plaintiff was also not eligible to earn

additional compensation by working at after-school programs.  (Id. ¶ 110)

       "An excessed counselor is entitled to interview for permanent placement where

vacancies become available." (Id. ¶ 108)  Plaintiff claims, however, that her "Unsatisfactory"

rating for the 2014-2015 school year "prevented [her] from being a desirable candidate" for a

permanent placement.  (Id.)

       As a result of being "excessed," Plaintiff has suffered "emotional distress."  (Id.

¶ 109)  She retired as of June 2016 without reaching her goal of 32 years of service.  (Id.)  As a

result, Plaintiff receives lower pension payments.  (Id. ¶¶ 109-11)  In addition, Plaintiff "could

not be hired as a per diem substitute after she retired [because of the] annual Unsatisfactory

rating."  (Id. ¶ 108)

## II.  PROCEDURAL HISTORY

### A.  Administrative Proceedings and Complaint

       Plaintiff filed a notice of claim against the DOE on February 8, 2016, and on

April 26, 2016, she filed a charge of discrimination with the U.S. Equal Employment

Opportunity Commission (the "EEOC"), in which she alleged age-based discrimination and

retaliation.  (Id. ¶¶ 119-20)  The EEOC issued a right to sue letter on February 13, 2019.  (Id.

¶ 122)

       The Complaint was filed on May 13, 2019, and alleges discrimination and

retaliation claims against the DOE and Rodriguez-Gonzalez under the ADEA, the NYSHRL, and

the NYCHRL.  (Cmplt. (Dkt. No. 1) ¶¶ 123-28)

B.      **September 30, 2020 Dismissal Order**

Defendants moved to dismiss, and this Court granted the motion in a September 30, 2020 order.  See Silva-Markus v. N.Y.C. Dep't of Educ., 19 Civ. 4335 (PGG), 2020 WL 5819555, at *1 (S.D.N.Y. Sept. 30, 2020) ("Dismissal Order").

As relevant here, this Court explained that acts of discrimination against Plaintiff "occurring more than 300 days before April 26, 2016 – i.e., before July 1, 2015 – [were] outside the statutory period," and that "nearly all of the Complaint's allegations concern[ed] conduct that took place before July 1, 2015."  Id. at *6.  Plaintiff's ADEA claim was timely only to the extent premised on (1) her Unsatisfactory rating for the 2014-2015 school year; (2) "the 'excessing' of Plaintiff . . . on July 30, 2015"; (3) "her ATR placement in September 2015"; and (4) "her alleged constructive discharge in June 2016."[5]  Id.

This Court went on to conclude that Plaintiff's ADEA discrimination claim fails because (1) no adverse employment action took place within the statutory period; and (2) Plaintiff's constructive discharge claim is based on conduct that took place outside the statutory period.  Id. at *8-9.

As to Plaintiff's ADEA retaliation claim, "by Plaintiff's own account, Rodriguez-Gonzalez was intent on forcing Plaintiff out of the . . . School and giving her an [Unsatisfactory] rating well before Plaintiff complained to the Office of Equal Opportunity in June 2015."  Id. at *10.  Accordingly, the Complaint does not establish a causal connection between Plaintiff's protected activity – her complaint to the DOE's Office of Equal Opportunity – and the adverse actions that Plaintiff experienced.  Id.

_____

[5]  Although Rodriguez-Gonzalez issued the Unsatisfactory rating in June 2015, Plaintiff alleged that she was not informed of the rating until February 10, 2016.  The Court assumed that a discrimination claim premised on the Unsatisfactory rating was timely on that basis.  See id.

In light of the dismissal of Plaintiff's ADEA claims, the Court declined to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims.  Id. at *11.

### C.   **Motion to Amend**

Following the Dismissal Order, Plaintiff moved to amend.  (Mot. (Dkt. No. 35)) The PAC is attached as an exhibit to the motion.  (PAC (Dkt. No. 35-1))

The PAC is identical to the Complaint in all respects, except that it adds the following allegations:

(1)   disciplinary notices issued to Plaintiff between March and June 2015 were designed to leave "enough of a paper trail to support an annual U-rating for the 2014-2015 school year";

(2)   when Plaintiff received her Unsatisfactory rating for the 2014-2015 school year, "she was automatically prevented from getting compensated for per session or summer work, and it would have been futile even if she tried for such extra compensable work";

(3)   on July 30, 2015, Plaintiff not only learned that she had been "excessed," but was also informed that she had been "placed into the Absent Teacher Reserve . . . pool";

(4)   as a DOE employee in the ATR pool, Plaintiff "was no longer assigned to a single school," she "was not given any work in her bilingual counselor license area," and "[s]ome of her assignments required her to pay for parking out of pocket";

(5)   even though Plaintiff – as a DOE employee in the ATR pool – was "entitled to interview for permanent placement where vacancies become available," Plaintiff's Unsatisfactory rating "prevented [her] from being a desirable candidate" for such permanent placement; and

(6)   Plaintiff's Unsatisfactory rating prevented her from being "hired as a per diem substitute after she retired."

(Id. ¶¶ 87, 100, 107-08)

D.        **The Magistrate Judge's Report and Recommendation**

This Court referred Plaintiff's motion to amend to Magistrate Judge Sarah L. Cave.  (Mot. (Dkt. No. 35); Dkt. No. 42)  On July 26, 2021, Judge Cave issued a thorough 22-page R&R recommending that Plaintiff's motion to amend be denied.  (R&R (Dkt. No. 43) at 2)

As to the timeliness of Plaintiff's ADEA claims, Judge Cave finds that the PAC "does not add new allegedly discriminatory or retaliatory events within the statutory period." (Id. at 8)  Accordingly, "only the 'excessing,' ATR placement, [Unsatisfactory] rating, and constructive discharge allegations [are] timely."  (Id.)

As to Plaintiff's ADEA discrimination claim, Judge Cave recommends denying leave to amend because (1) the PAC "continue[s] to allege only conclusory assertions of age-based discrimination, based on [Plaintiff's] own belief and speculation, which cannot plausibly plead the requisite inference of discriminatory intent"; (2) the PAC does not "plead that [Plaintiff's] 'excessing,' ATR status, and [Unsatisfactory] rating affected her in any manner that could constitute an adverse employment action"; and (3) the PAC does not "allege actual damages from the alleged discrimination."  (Id. at 11-13)

As to Plaintiff's hostile work environment/constructive discharge allegations, Judge Cave concludes that "[a]ll of Rodriguez-Gonzalez's allegedly hostile actions [set forth in the PAC] occurred before July 1, 2015, and, accordingly, cannot give rise to a plausible hostile work environment claim."  (Id. at 15)

With respect to Plaintiff's ADEA retaliation claim, Judge Cave concludes that the PAC does not remedy "the same issue noted by [this Court] in [the Dismissal Order]:  [Plaintiff] fails to allege how Rodriguez-Gonzalez's adverse actions towards her were 'causally connected' to the [complaint she made to the DOE's Office of Equal Opportunity]."  (Id. at 19)

Finally, Judge Cave recommends that this Court decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.  (Id. at 21)

E.   **Plaintiff's Objections**

Plaintiff filed objections to the R&R on August 9, 2021.  (Pltf. Obj. (Dkt. No. 44))

Plaintiff contends that Judge Cave errs in finding that the Unsatisfactory rating is not an adverse employment action for purposes of Plaintiff's ADEA discrimination claim.  (Id. at 9-10)  According to Plaintiff, she experienced "automatic prohibitory consequences" as a result of the Unsatisfactory rating, and "the negative annual evaluation itself constitutes an adverse employment action for purposes of an age discrimination claim."  (Id. at 10)

Plaintiff further argues that, "[e]ven if some of the adverse employment actions [in the PAC] do not meet the standard for a discrimination claim, they are certainly materially adverse under the broader standard for adverse actions for retaliation claims."  (Id. at 11)  Although Plaintiff – in making this objection – does not reference the R&R, it appears that she objects to Judge Cave's conclusion that Plaintiff's "excessing" – which caused Plaintiff "parking issues and to incur additional commuting costs" – is not an adverse action for purposes of her ADEA retaliation claim.[6]  (Id.)

Plaintiff also complains that Judge Cave's "analysis on the adequacy of Plaintiff's discrimination claim at this early stage is too restrictive."  (Id.)  According to Plaintiff, she need only allege facts demonstrating "a minimal inference of discriminatory motivation at the motion

---

[6]  In her objections regarding her retaliation claim, Plaintiff also argues that the "Unsatisfactory" rating is an adverse action, but both Judge Cave and this Court – in the Dismissal Order – have acknowledged that the Unsatisfactory rating is an adverse action for purposes of Plaintiff's ADEA retaliation claim.  (R&R (Dkt. No. 43) at 19); Dismissal Order, 2020 WL 5819555, at *10.

to dismiss stage," and the PAC alleges "remarks made to [Plaintiff] by [Rodriguez-Gonzalez] that support at least a minimal inference of discriminatory motivation."  (Id. at 11-12)

Finally, Plaintiff argues that Judge Cave's "analysis on lack of a causal connection for Plaintiff's retaliation claim . . . clearly applies too strict a standard at the pleadings stage."  (Id. at 12)  According to Plaintiff, "[a]fter filing her [DOE Office of Equal Opportunity] complaint on June 1, 2015, the [PAC] pleads a barrage of adverse actions that she suffered within a month thereafter."  "[T]he temporal proximity alone to these events bespeaks a powerful retaliation claim."  (Id.)

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.

However, "[o]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review."  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration omitted).  "[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates

the original arguments, the Court will review the [R&R] strictly for clear error." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citation and quotation marks omitted).

For portions of the R&R to which no objection is made, the district court's review is limited to a consideration of whether there is any "clear error on the face of the record" that precludes acceptance of the recommendations. Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (citation and quotation marks omitted).

### B.  **Motion to Amend**

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).  "Where the possibility exists that [a] defect can be cured, leave to amend . . . should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).  "An amendment to a pleading is futile if the proposed claim could

11

not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."  Iqbal, 556 U.S. at 678.

"[Parties] opposing a motion to amend . . . bear[] the burden of establishing that an amendment would be futile."  Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013) (citing Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

II.   **ANALYSIS**[7]

    A.    **Plaintiff's Objections**

        As discussed above, in her objections, Plaintiff contends that Judge Cave erred in

finding that

    (1)    the Unsatisfactory rating does not constitute an adverse action for purposes of
Plaintiff's ADEA discrimination claim; and

    (2)    Plaintiff's "excessing" does not constitute an adverse action for purposes of her
ADEA retaliation claim.

(See Pltf. Obj. (Dkt. No. 44) at 9-11)  Plaintiff further argues that Judge Cave applied an unduly

restrictive pleading standard for Plaintiff's ADEA discrimination and retaliation claims.  (See id.

at 11-12)

        In connection with her first objection regarding the Unsatisfactory rating, Plaintiff

merely repeats arguments she made in her moving brief.  (Compare Pltf. Obj. (Dkt. No. 44) at 9-

11 with Pltf. Mot. to Amend Br. (Dkt. No. 36) at 9-10)  Accordingly, the Court reviews Judge

Cave's analysis on this point for clear error.  See DiPilato, 662 F. Supp. 2d at 339.  Review will

be de novo as to Plaintiff's remaining objections.  Portions of the R&R to which no objection has

been made will be reviewed for clear error.  See 28 U.S.C. § 636(b)(1)(C); Wingate, 2011 WL

5106009, at *1.

    B.    **Timeliness of Plaintiff's ADEA Claims**

        "Before a plaintiff may assert claims under . . . the ADEA in federal court, she

must present the claims forming the basis of such a suit in a complaint to the EEOC."  Zoulas v.

New York City Dep't of Educ., 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019).  "Where the plaintiff

---

[7]  The Court assumes familiarity with the Dismissal Order, which the Court incorporates by
reference to the extent that the PAC does not cure the defects identified in that order.

complains of discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, such claims are not actionable if they occurred" more than 300 days before an employee presents claims to the EEOC.  Id. (quotation marks and citation omitted).  "'[C]laims regarding acts that occurred more than three hundred days prior to the employee's initiation of administrative review are thus time-barred.'"  Apionishev v. Columbia Univ., No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *3 (S.D.N.Y. Mar. 25, 2011) (quoting Klein v. New York Univ., No. 07 Civ. 0160 (RLC), 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008)).

The Court finds no error in Judge Cave's analysis of the timeliness of Plaintiff's ADEA claims.  The PAC does not plead new allegedly discriminatory or retaliatory acts within the statutory period.  Accordingly – as the Court found in connection with the Complaint – only the following allegedly adverse actions can be considered in resolving Plaintiff's motion to amend:  (1) the Unsatisfactory rating; (2) the "excessing" of Plaintiff; (3) Plaintiff's ATR placement; and (4) Plaintiff's constructive discharge.  See Dismissal Order, 2020 WL 5819555, at *6.[8]

### C.    Plaintiff's ADEA Discrimination Claim

#### 1.    Applicable Law

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with

---

[8]  As discussed above, although the Unsatisfactory rating was issued outside of the statutory period, Plaintiff claims that she did not learn of the rating until approximately eight months later – at a point within the statutory period.  Accordingly, a claim premised on the rating is timely.  See Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016) ("A claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct.").

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was 'within the protected age group,' (2) he or she was 'qualified for the position,' (3) he or she 'experienced adverse employment action,' and (4) 'such action occurred under circumstances giving rise to an inference of discrimination.'" Langella v. Mahopac Cent. Sch. Dist., No. 18-cv-10023 (NSR), 2020 WL 2836760, at *6 (S.D.N.Y. May 31, 2020) (quoting Green v. Town of E. Haven, 952 F.3d 394, 403 (2d Cir. 2020)).

To satisfy the "adverse employment action" element, the alleged adverse action must be "materially adverse with respect to the terms and conditions of employment," and "more disruptive than a mere inconvenience or an alteration of job responsibilities." Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015) (quotation marks and citations omitted).

## 2.    **Analysis**

This Court agrees with Judge Cave that Plaintiff's motion to amend her ADEA discrimination claim should be denied, because the PAC does not plead facts demonstrating that adverse actions took place within the statutory period. (See R&R (Dkt. No. 43) at 12-13)

As an initial matter, the PAC does not plead new facts that would require this Court to materially alter the analysis set forth in the Dismissal Order with respect to Plaintiff's ADEA discrimination claim. As this Court previously explained, Plaintiff's Unsatisfactory rating, the "excessing" of Plaintiff, and her ATR placement do not – standing alone – constitute adverse actions for purposes of an ADEA discrimination claim. See Dismissal Order, 2020 WL 5819555, at *8.

The new allegations in the PAC do not alter this result. In the PAC, Plaintiff asserts that the Unsatisfactory rating has an "automatic adverse impact" in that Plaintiff "was

15

automatically prevented from getting compensated for per session or summer work." (PAC (Dkt. No. 35-1) ¶ 100) The PAC also alleges that – after Plaintiff was "excessed" and placed in the ATR pool – the Unsatisfactory rating "prevented [her] from being a desirable candidate for future [permanent] employment in her license area," and made her ineligible to be "hired as a per diem substitute after she retired." (Id. ¶ 108)

As Judge Cave correctly notes, however, for a negative review to qualify as an adverse action, Plaintiff must cite negative consequences that "go beyond mere speculation." Lebowitz v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 158, 171 (E.D.N.Y. 2017) (holding that the plaintiff did not allege an adverse employment action where he did "not allege that he ever applied for other employment, rendering speculative his claim that he was denied other potential work opportunities"); see also Malone v. N.Y. Pressman's Union No. 2, No. 07 Civ. 9583 (LTS) (GWG), 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011) ("The elimination of speculative, potential future opportunities is insufficient to establish an adverse employment action.").

Here, Plaintiff has not pled facts suggesting that the Unsatisfactory review had negative consequences for her. For example, Plaintiff does not assert that she ever sought out per-session or summer work after receiving her Unsatisfactory rating. To the contrary, the PAC alleges that Plaintiff "resigned from her position as the guidance counselor for the PM and Saturday academic programs" six months before she received the Unsatisfactory rating, and more than a year before learning of the Unsatisfactory rating.[9] (PAC (Dkt. No. 35-1) ¶¶ 27-33); see Giordano-Forkan v. N.Y.C. Dep't of Educ., No. 13 Civ. 06950 (GBD), 2014 WL 5369426, at

---

[9] The fact that Plaintiff was unaware of the Unsatisfactory rating for eight months tends to undermine her claim that that rating resulted in a "materially adverse change in the terms and conditions of [her] employment," as is necessary to sustain an ADEA discrimination claim. Lebowitz, 407 F. Supp. 3d at 171.

*3 n.2 (S.D.N.Y. Oct. 17, 2014) (holding that, although the plaintiff argued that her "U-Rating denied her the opportunity to do per session or summer work and that applying to summer and per session work was futile," the proposed amended complaint presented "no evidence that [p]laintiff applied to and was rejected from any work opportunities"; accordingly, plaintiff's allegations were "too speculative to support her retaliation claim" (quotation marks and alterations omitted)).[10]

       Nor does Plaintiff allege that she ever attempted to apply for a permanent position after she was "excessed."  See Woolfolk v. N.Y.C. Dep't of Educ., 19-CV-3706 (RA), 2020 WL 1285835, at *6 (S.D.N.Y. Mar. 18, 2020) (holding that an ATR employee's "allegations about not receiving certain interview offers for future employment are too speculative to constitute an adverse employment action").

       Nor does Plaintiff allege that she sought per diem substitute work after her retirement.

       In sum, this Court sees no error in Judge Cave's finding that the alleged harm flowing from the Unsatisfactory rating is merely speculative, and therefore the Unsatisfactory

---

[10]  Plaintiff contends that Herling v. N.Y.C. Dep't of Educ., 13-cv-5287, 2014 WL 1621966 (E.D.N.Y. Apr. 23, 2014), holds that the unavailability of per-session work as a result of a "U annual rating" constitutes an adverse action "even if [a] teacher . . . fails to apply [for] per session postings."  (Pltf. Obj. (Dkt. No. 44) at 10)  Plaintiff has misstated the facts in Herling, however.  In that case, plaintiff had "applied for numerous after-school per-session activities" after receiving his "U" rating, but those positions were awarded to other teachers.  Herling, 2014 WL 1621966, at *3.  And in Herling – unlike here – plaintiff did not plead that he had ceased pursuing supplemental employment opportunities long before receiving an Unsatisfactory rating. In short, Herling does not support Plaintiff's adverse action argument.

Given (1) the PAC's allegations that Plaintiff ceased pursuing supplemental employment opportunities long before she became aware of the Unsatisfactory rating; and (2) the absence of allegations that Plaintiff ever sought per-session work after learning of the Unsatisfactory rating, any claim premised on the lost opportunity to obtain per-session work is speculative.

rating does not constitute an adverse action for purposes of Plaintiff's ADEA discrimination claims.  See Lebowitz, 407 F. Supp. 3d at 171.

   The PAC also alleges that, as a result of the "excessing" of Plaintiff and her placement in the ATR pool, she was "required . . . to pay for parking out of pocket, which she was not required to do at her previous school, and she was not given any work in her bilingual counselor license area as an ATR."  (PAC (Dkt. No. 35-1) ¶ 107)  As Judge Cave correctly concludes, however, the loss of free parking does not rise to the level of an adverse employment action.  See, e.g., Sherman v. City of New York, No. 18-cv-6907 (LDH), 2020 WL 6873453, at *4 (E.D.N.Y. Nov. 23, 2020) (loss of exclusive parking space is "insufficient to support an adverse employment action"); Maysonet v. Thompson, No. 03 Civ. 5223 (GEL), 2005 WL 975897, at *10 (S.D.N.Y. Apr. 25, 2005) ("difficulties obtaining parking spaces . . . do not come close to a material adverse change in working conditions").

   As to Plaintiff's claim that she was not assigned "any work in her bilingual counselor license area" while in the ATR pool, a change in responsibilities – which necessarily occurs whenever a teacher is reassigned from a permanent position to the ATR pool – does not constitute an adverse action unless accompanied by some more significant material adverse effect, such as a reduction in pay or a loss of benefits.  See, e.g., Torres v. N.Y.C. Dep't of Educ., 18-CV-2156 (NGG) (RER), 2019 WL 2124891, at *7 (E.D.N.Y. May 15, 2019) (holding that plaintiff had not alleged an adverse employment action where, "as a result of being placed in the ATR[,] he now teaches elementary school, as opposed to his previous position as a [seventh- and eighth-grade] math teacher"); Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y., 230 F. Supp. 3d 88, 106 (E.D.N.Y. 2017) (finding no adverse action where the plaintiff "experience[d] a change in job title," and "went from being a teacher assigned to the English

Language Arts department to a member of the ATR pool," but "did not experience a change in salary or benefits after she received an appropriate letter of excess"). Because Plaintiff does not allege that she suffered a reduction in pay, a loss of benefits, or some other material adverse effect as a result of being "excessed" and placed in the ATR pool – as explained in the Dismissal Order – the "excessing" and the placement in the ATR pool do not constitute adverse actions. See Dismissal Order, 2020 WL 5819555, at *8.

In sum, Judge Cave correctly concludes that amendment would be futile as to Plaintiff's ADEA discrimination claim, because the PAC does not allege any cognizable adverse actions that Plaintiff experienced.

### D. Hostile Work Environment and Constructive Discharge Claim

#### 1. Applicable Law

"An actionable discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." Kassner, 496 F.3d at 240 (quotation marks, citations, and alteration omitted). "Among the factors to consider when determining whether an environment is sufficiently hostile are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)); see also id. (explaining that the "same standards" applicable to hostile work environment claims brought under Title VII "apply to hostile work environment claims brought under the ADEA").

19

To state a claim for constructive discharge under the ADEA, a plaintiff must show that "his employer, rather than acting directly, deliberately made his working conditions so intolerable that he was forced into an involuntary resignation." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 161 (2d Cir. 1998) (quotation marks, citations, and alterations omitted). "Constructive discharge is, in effect, 'an aggravated case of . . . hostile work environment.'" Petyan v. N.Y.C. L. Dep't, No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961, at *9 n.10 (S.D.N.Y. Apr. 23, 2015), report and recommendation adopted, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) (alteration in Petyan) (quoting Pa. State Police v. Suders, 542 U.S. 129, 146 (2004)). Thus, "'when an individual has failed to allege a hostile work environment, his constructive discharge claim based on those allegations must also fail.'" Ware v. L-3 Vertex Aerospace, LLC, No. 16 Civ. 8067 (LAP), 2020 WL 783764, at *10 n.8 (S.D.N.Y. Feb. 18, 2020) (quoting Lambert v. Trump Int'l Hotel & Tower, 304 F. Supp. 3d 405, 427 (S.D.N.Y. 2018)).

2. **Analysis**

Plaintiff does not object to Judge Cave's analysis of her hostile work environment/constructive discharge claim, and this Court finds no error in that analysis. (See R&R (Dkt. No. 43) at 14-15) The PAC – like the Complaint – does not allege that Rodriguez-Gonzalez engaged in behavior that caused or contributed to a hostile work environment on or after July 1, 2015. Nor does the PAC plead facts demonstrating that Plaintiff was subjected to a hostile work environment while assigned to the ATR pool, such that she was forced to retire.

In sum, the defects identified in the Dismissal Order are not cured in the PAC. See Dismissal Order, 2020 WL 5819555, at *9. Accordingly, Judge Cave correctly recommends that leave to amend Plaintiff's hostile work environment/constructive discharge claim be denied.

E.     **Plaintiff's ADEA Retaliation Claim**

1.     **Applicable Law**

The ADEA's anti-retaliation provisions make it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . participated in any manner in an investigation, proceeding, or litigation under this [Act]."  29 U.S.C. § 623(d).  "To establish a prima facie case of retaliation, a plaintiff must show (1) the employee was engaged in an activity protected by [the ADEA], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  Langella, 2020 WL 2836760, at *11 (quotation marks and citation omitted).

For purposes of an ADEA retaliation claim, "[p]rotected activity refers to action taken to protest or oppose statutorily prohibited discrimination."  Delville v. Firmenich Inc., 920 F. Supp. 2d 446, 463 (S.D.N.Y. 2013) (quotation marks and citation omitted).  "Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity."  Batiste v. City Univ. of N.Y., 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017) (citing, inter alia, Rojas v. Roman Cath. Diocese of Rochester, 660 F.3d 98, 107-08 (2d Cir. 2011)).

"'The standard for an "adverse employment action" in a retaliation claim . . . is not as demanding as it is in a discrimination claim.'"  Smith v. N.Y.C. Dep't of Educ., 18 Civ. 8545 (PGG), 2019 WL 6307471, at *11 (S.D.N.Y. Nov. 25, 2019) (quoting Quadir v. N.Y. State Dep't of Labor, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014)).  "In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged action materially

adverse, which in this context means it might well have dissuaded a reasonable worker from

making or supporting a charge of discrimination." Id. (quotation marks and citation omitted).

>    2.    **Analysis**

Judge Cave correctly concludes that the PAC does not remedy the defects cited by

this Court in dismissing the ADEA retaliation claim pled in the Complaint.  (See R&R (Dkt. No.

43) at 19)  The PAC's allegations do not suggest that Plaintiff's December 2014 complaint to

Rodriguez-Gonzalez involved age discrimination.  Accordingly – as in the Complaint – the only

protected activity alleged in the PAC is Plaintiff's June 2015 complaint to the DOE's Office of

Equal Opportunity.  See Dismissal Order, 2020 WL 5819555, at *9-10.

As explained in the Dismissal Order, the "excessing" of Plaintiff and her

placement in the ATR pool do not alone constitute adverse action.  See Dismissal Order, 2020

WL 5819555, at *10 (collecting cases).  Although the PAC, like the Complaint, alleges that

Plaintiff lost supplemental income as a result of her "excessed" status, as discussed above, she

stopped participating in afternoon and weekend sessions – and thus gave up that supplemental

income – in December 2014, six months before she complained to the Office of Equal

Opportunity.  This sequence of events is fatal to Plaintiff's claim that she lost supplemental

income as a result of retaliation.  See id.  And while the PAC adds an allegation that Plaintiff was

required to occasionally pay for parking as a result of her placement in the ATR pool, a minor

inconvenience such as the loss of free parking is not the type of action that "might well . . .

dissuade[] a reasonable worker from making or supporting a charge of discrimination."  Smith,

2019 WL 6307471, at *11 (quotation marks and citation omitted).[11]

---

[11]  To the extent that Plaintiff's required medical examination could be viewed as an adverse
action, as the R&R recognizes, "both [the notice of the medical examination and the examination
itself] fall outside the statutory period."  (R&R (Dkt. No. 43) at 19 n.2)  Accordingly, allegations

While Plaintiff's Unsatisfactory rating constitutes an adverse action under the broader standard applicable to retaliation claims, see Dismissal Order, 2020 WL 5819555, at *10 (noting that "[c]ourts have found . . . that negative evaluations can constitute adverse action for purposes of a retaliation claim"; collecting cases), Judge Cave finds that the PAC – like the Complaint – does not allege a causal connection between Plaintiff's complaint to the Office of Equal Opportunity and her Unsatisfactory rating.  (R&R (Dkt. No. 43) at 19)  The PAC does not contain any new factual allegations suggesting that Plaintiff's Unsatisfactory rating was linked to her complaint to the OEO, as opposed to Rodriguez-Gonzalez's pre-existing desire to remove Plaintiff from the School.  Indeed, new allegations in the PAC undermine rather than support Plaintiff's retaliation claim.

The PAC alleges that Rodriguez-Gonzalez issued disciplinary notices to Plaintiff between March and June 2015 in order to "le[ave] enough of a paper trail to support an annual [Unsatisfactory rating] for the 2014-2015 school year."  (PAC (Dkt. No. 35-1) ¶ 87)  This new allegation supports the inference that Rodriguez-Gonzalez "was intent on forcing Plaintiff out of the . . . School and giving her [an Unsatisfactory] rating well before Plaintiff complained to the Office of Equal Opportunity in June 2015."  Dismissal Order, 2020 WL 5819555, at *10.

In sum, the PAC does not allege the requisite causal connection, and Judge Cave correctly recommends that Plaintiff should be denied leave to amend her ADEA retaliation claim.

---

regarding the medical examination cannot support Plaintiff's ADEA retaliation claim.  See Zoulas, 400 F. Supp. 3d at 49.

F.   **Plaintiff's NYSHRL and NYCHRL Claims**

Because the PAC does not plausibly allege a federal claim, Judge Cave recommends that this Court not exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.  (R&R (Dkt. No. 43) at 21)  "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  Sefovic v. Mem'l Sloan Kettering Cancer Ctr., No. 15 Civ. 5792 (PAC), 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  There is no reason to vary from that rule here.

## CONCLUSION

The R&R is adopted as set forth above, and Plaintiff's motion to amend is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 35) and to close this case.

Dated: New York, New York
       March 10, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge